UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMINA KITWARA,<br>2707 Saint Joseph Dr.,<br>Bowie Maryland, 20871<br><br>    Plaintiff,<br><br>v.<br><br>JULIUS JENGE,<br>Serve: 1600 Granby St. APT 304<br>Norfolk VA, 23510<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.:<br>)<br>)<br>)<br>)<br>)  **JURY TRIAL**<br>)  **DEMANDED**<br>) |

## COMPLAINT

**COMES NOW** the Plaintiff, Amina Kitwara by Counsel, in her capacity as a partner pursuant to Va. Code § 50-73.103(B), in support of her claims against Defendant Julius Jenge, for Breach of Partnership Agreement, Breach of Fiduciary Duty and Conversion stating as follows:

### PARTIES

1. Plaintiff Amina Kitwara ("Plaintiff" or "Amina") is a resident of Maryland, with her last address at 2707 Saint Joseph Dr, Bowie Maryland, 20871.

2. Defendant Julius Jenge ("Defendant" or "Julius") is a resident of the Commonwealth of Virginia, with his last known address at 1600 Granby St. APT 304, Norfolk VA, 23510.

### STATEMENT OF JURISDICTIONAL GROUNDS

3. This Court has original diversity jurisdiction over Amina's lawsuit pursuant to 28 U.S.C. § 1332; here, there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) because the Corporation operates an office in Alexandria, Virginia, and the principal office of the Partnership is located at 11890 Sunrise Valley Dr. Ste. # 606, Reston, VA 20191, both of which are within the Alexandria Division for the United States District Court for the Eastern District of Virginia.

## STATEMENT OF FACTS

5. Royal Care Inc. ("Royal Care" or "Corporation") is a home health care business that was incorporated in the Commonwealth of Virginia on August 3, 2017.

6. Because it lacked funds at the time of its incorporation, the Corporation did not seriously begin operation until January of 2020.

7. In late 2019, Julius approached Mr. and Mrs. Kitwara (Amina's parents) seeking financial support for the startup of Royal Care. The parties agreed that the Kitwaras would fund Royal Care's operations in exchange for an ownership interest, to be held by Amina, in the Corporation.

8. Instead of issuing stock in Royal Care, however, the parties decided to have the Corporation owned and managed by a Partnership and accordingly entered a Partnership Agreement (the "Agreement") on January 24, 2020.  ***Exhibit 1.***

9. The Agreement formed a partnership between Amina, Julius and two other partners[1] (the "Partnership")[2] and designated the entirety of Royal Care as the property of the Partnership. *Id*. at ¶¶ 3, 28.  Currently, the parties hereto each own a 50% interest in the Partnership.

---

[1] The initial Partnership Agreement listed four partners who owned the following: Julius 40%, Amina Kitwara 30%, Benjamini Mwaipaja 20%, and Desdery Kimolo 10%. On June 19, 2021, Mr. Mwaipaja sold his 20% interest to Amina. Mwaipaja Purchase Agreement, ***Exhibit 2***. On June 26, 2021, Ms. Kimolo sold her 10% interest to Julius. Kimolo Purchase Agreement, ***Exhibit 3***.

[2] The partnership entity named itself "Royal Care Inc." ***Exhibit 1***, ¶ 2. For purposes of clarity, the partnership entity shall be referred to as the "Partnership," while the corporate entity Royal Care Incorporated, being the property of the Partnership will be referred to as "Royal Care."

10. Under the Agreement, both Partners were to control how Royal Care was governed and to make capital contributions. *Id*. at ¶¶ 15, 28. Julius has yet to make any capital contributions.

11. In the Agreement, the Partnership chose to run the Corporation by a Board of Directors and those Directors are currently Amina and Julius. *Id*. at ¶ 7.

12. Julius was originally designated as CEO of Royal Care. *Id*. at ¶ 11. To date, he has continued in that role.

13. As CEO, Julius was paid a salary of $5,000 every two weeks. The parties agreed that Julius' compensation was to be only through payroll, unless authorized by the unanimous consent of all partners. *Id.* at ¶ 22.

**Julius's Mismanagement and Misappropriation of Partnership Assets**

14. Amina, who is not employed by the Partnership or Corporation, trusted Julius to run the business appropriately as the Corporation's CEO.

15. In the summer of 2022, however, she was notified that Julius had not been paying employee payroll taxes and the Corporation had incurred a substantial IRS tax lien of close to $600,000, despite the fact Julius was specifically delegated     as the "Tax Matters Partner" in the Agreement. IRS Lien Notice attached as ***Exhibit 4***; *See also **Exhibit 1*** at ¶ 29.

16. In the process of examining the Corporation's financial accounts to understand how the failure to pay taxes could occur, Amina discovered numerous financial improprieties.

17. First, without Amina's consent, Julius had obtained a high-interest rate loan in Royal Care's name for approximately $300,000.00 (the "Loan Funds"). Julius initially deposited some of these Loan Funds into the Royal Care main bank account in early August. August and September Statements "Operating Account", ***Exhibit 5*** (8/3 deposit $243,750, 8/4 deposit $50,000).

18. On the same day the Loan Funds were deposited in the Operating Account, however, Julius set up a new bank account for Royal Care without any notice to Amina and with only himself as a signatory. August Statement "Undisclosed Account", **Exhibit 6**.

19. Julius immediately transferred $293,750.00 into the Undisclosed Account. *Id.* (8/3, 8/4 deposits).

20. Amina only became aware of the Undisclosed Account because an accountant, who was assisting Royal Care in handling its tax matters, informed her of its existence. Julius had sent the August 2022 bank statement for the Undisclosed Account to the accountant, who then shared it with Amina.

21. Having secreted the Loan Funds away from Amina's observation, on August 11th Julius then **wired $30,000 overseas to his country of origin, Tanzania**, for his own personal purposes. *Id*. (8/11).

22. In addition, from the Undisclosed Account he began writing unexplained checks believed to be for non-business purposes in an amount of more than $60,000 during the month of August. *Id*. (8/3, 8/4, 8/5, 8/8, 8/18, 8/22, 8/26).

23. Upon examination of the Operating Account statements from August and September, Amina also learned that Julius had withdrawn an amount close to $75,000.00 in untraceable cashier's checks that were issued to and cashed by Julius. **Exhibit 5**.

24. Upon information and belief, Julius has wrongly squandered Corporation funds for his or others personal benefit for years; a full forensic audit will need to be conducted to determine exactly how much corporate money has been misappropriated.

25. Julius is from Tanzania where he frequently visits. Upon information and belief, Julius has transferred much of these Partnership funds outside the reach of this jurisdiction to accounts in Tanzania.

26. Once Julius realized Amina was examining the bank and financial accounts, he hastily removed Amina's agent, serving as co-signatory (as designated by the Agreement (***Exhibit 1***, ¶¶ 13, 14)) on Royal Care's bank accounts and administrator on the bookkeeping and billing accounts, in October of 2022.

27. Currently, only Julius has access to the Royal Care bank accounts and bookkeeping/billing software.  Since this software is used for scheduling employees, paying employees and vendors, and keeping track of Corporation expenses, Julius has virtually highjacked control over Royal Care.

28. To address these crippling concerns, Amina initiated an emergency shareholder meeting, pursuant to her rights in the Agreement.  Notice of Emergency Meeting attached as ***Exhibit 7***; See also ***Exhibit 1*** at ¶ 32.

29. The meeting took place on October 24, 2022.

30. Julius, who received notice of the meeting the week before, failed to appear.  Minutes of Emergency Meeting attached as ***Exhibit 8.***

31. Since that time Julius has retained counsel.  While Julius did, through Counsel, provide statements for the Operating Account for September-November, he has refused to provide statements for the Undisclosed Account.

32. Moreover, he has refused to provide Amina (or her agent) access to the banking, billing and bookkeeping accounts as required by the Agreement.

33. Though Amina has tried to work this matter out without the need for court action, because of Julius' refusal to cooperate Amina has been forced to bring this action.

### Count I— Breach of Partnership Agreement

34. Count I hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference.

35. Amina brings this action as a Partner pursuant to Va. Code § 50-73.103(B).

36. Amina and Julius entered into a valid, binding Partnership Agreement on January 24, 2020.

37. Julius violated the following provisions of the Agreement:

   a. Julius never made any capital contributions to the Partnership, let alone on time. See ***Exhibit 1*** at ¶ 15.

   b. Julius failed to consult Amina on numerous financial decisions of the Partnership including whether: (1) the Loan Funds should have been obtained in Royal Care's name; (2) the Undisclosed Account should have been opened; and (3) Amina's agent should be removed as signatory on Royal Care's bank accounts and from access to the billing and bookkeeping accounts/software. See *Id*. at ¶¶ 21, 25.

   c. By removing Amina's agent as signatory on Royal Care's bank account, secretly creating the Undisclosed Account without Amina's permission or knowledge and blocking Amina from accessing any of Royal Care's accounting systems, Julius functionally took over control and operation of Royal Care without the unanimous consent of the Partners, in violation of the agreement. See *Id.* at ¶ 28.

   d. Julius failed to pay Royal Care's federal employment tax for years. As a result, the IRS placed a lien on Royal Care's property in an amount close to $600,000.00. Accordingly, Julius breached his duty as the "Tax Matter Partner." See *Id.* at ¶ 29

   e. Julius has transferred tens of thousands of dollars overseas and has taken out tens of thousands more in the form of non-traceable cashier checks. Instead of disclosing his conduct, Julius has been actively concealing it and obstructing all attempts at accountability in violation of his contractual Duty of Loyalty. See *Id.* at ¶59.

   f. In Violation of the Duty of Accountability, Julius secretly created the Undisclosed Account without Amina's knowledge or permission,   usurped Royal Care's

business account as his personal piggy bank and refused to provide any explanation for the thousands of dollars he diverted from Royal Care into the Undisclosed Account. See *Id.* at ¶ 61.

g. Julius committed the Partnership to financial obligations in excess of $50,000.00 without the unanimous consent of the Partners. See *Id.* at ¶ 63(b).

38. As a direct and proximate result of Defendants' material breaches of the Agreement, Amina has been removed from access as a partner and suffered extensive loss in her partnership interest.

39. Particularly, Royal Care has incurred mounds of high interest debt, hemorrhaged hundreds of thousands of dollars of lost funds and incurred crippling liens and fees for tax delinquency, most of which Amina is personally liable for as a partner. Accordingly, the value of Amina's interest in the Partnership has declined substantially.

40. In addition, under the terms of the Agreement (¶¶ 40-42), Julius should be considered "Involuntarily Withdrawn" and his interests sold, pursuant to the Agreement sale provisions.

**WHEREFORE**, Plaintiff claims against Defendant, under **Count I**, the following:

a. Compensatory damages in an amount of at least $1,000,000;

b. Equitable relief, to include an injunction of Defendant's violations of the Agreement and specific performance of the Agreement's terms (up to and including withdraw and sale of his partnership interest).

c. Court costs in bringing this action;

d. Pre and post-judgment interest at the judgment rate; and

e. Such other and further relief as this Honorable Court deems proper.

### Count II—Breach of Fiduciary Duty - Va. Code § 50-73.103

41. Count II hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference.

42. This Count is brought by Amina pursuant to her rights as a co-partner under Va. Code § 50-73.103(B).

43. Defendant Julius is a 50% owner of the Partnership. At all material times, he has also served as CEO of Royal Care which was property owned exclusively by the Partnership.

44. In his capacities as both Partner and CEO, Julius had a duty of loyalty and care to the Partnership and to Amina as a co-partner to discharge his duties as a CEO/Partner in accordance with his good faith business judgment in the best interests of Royal Care and the Partnership.

45. Julius breached this duty by:

    a. Taking out high-interest rate loans in Royal Care's name without Amina's consent;

    b. Removing the co-signatory on Royal Care's bank account, effectively stifling any accountability over his conduct;

    c. Preventing Amina from accessing Royal Care's bank accounts and computer systems to monitor Julius' conduct and assist in the governing of the Corporation;

    d. Creating the Undisclosed Account without the knowledge or permission of Amina.

    e. Transferring Royal Care's funds into the Undisclosed Account for his own personal gain;

    f. Withdrawing Royal Care's funds in the form of untraceable cashiers checks without offering any explanation and without Amina's consent;

    g. Transferring tens of thousands of dollars of Royal Care's funds to international accounts without Amina's consent;

    h. Failing to pay Royal Care's employment taxes despite his explicit obligation to do so under the Agreement;

46. As a direct and proximate cause of Julius' breaches, Amina has been significantly damaged.

47. Moreover, because Julius acted with actual malice toward Amina amounting to a willful and wanton disregard of Amina's rights, Julius should also be found liable for punitive damages.

**WHEREFORE**, Plaintiff claims against Defendant, under **Count II**, the following:

    a. Compensatory damages in an amount of at least $1,000,000;

    b. Punitive damages in an amount permitted by law;

    c. Equitable relief, to include an injunction of Defendant's violations of the Agreement and expulsion of Julius as a Director and/or Partner of the Partnership;

    d. Court costs in bringing this action;

    e. Pre and post-judgment interest at the judgment rate; and

    f. Such other and further relief as this Honorable Court deems proper.

### Count III—Conversion

48. Count III hereby incorporates the preceding and subsequent paragraphs of this Complaint by reference.

49. This Count is brought by Amina pursuant to her rights as a Partner under Va. Code § 50-73.103(B)(2).

50. Julius wrongfully exercised, assumed authority over, and undertook acts of dominion over Partnership property, including, but not limited to, hundreds of thousands of dollars of Royal Care's funds, thereby depriving the Partnership and Amina of possession of said property and in denial of, or inconsistent with, the Partnerships' right to said property.

51. The Partnership and Amina have an ownership interest in, and the right to immediate possession of, said property.

52. Moreover, because Julius acted with actual malice toward Amina and the Partnership, amounting to a willful and wanton disregard of Amina and the Partnerships' rights, Julius should also be found liable for punitive damages.

**WHEREFORE**, Plaintiff claims against Defendant, under **Count III**, the following::

   a. Compensatory damages in an amount of at least $1,000,000;

   b. Immediate return of any and all unlawfully converted property in the form of preliminary and/or permanent injunctive relief;

   c. Equitable relief, to include the immediate return of any and all unlawfully converted property in the form of preliminary and/or permanent injunctive relief and expulsion or removal of Julius as a Director and/or Partner of the Partnership;

   d. Punitive damages in an amount permitted by law;

   e. Court costs in bringing this action;

   f. Pre and post-judgment interest at the judgment rate; and

   g. Such other and further relief as this Honorable Court deems proper.

Respectfully submitted,

Amina Kitwara,

November 30, 2022

By Counsel: ____/s/_____
Timothy P. Bosson, Esq. (VSB: 72746)
Robert Rose, Esq. (VSB: 94493)
Isaiah R. Kalinowski, Esq. (VSB 71125)
Bosson Legal Group, PC
8300 Arlington Blvd., Ste. B2
Fairfax, Virginia 22031
tbosson@bossonlaw.com
rrose@bossonlaw.com
ikalinowski@bossonlaw.com
Phone (571) 775-2529
Fax (571) 775-2521

Faisal Shawn Mughal, Esq.
Mughal Law Firm PLLC
6214 Old Franconia Road. Suite B
Alexandria, Virginia 22310
Phone (703) 672-2165
Fax (703) 672-2166
shawn@mughallawfirm.com
*Counsel for Plaintiff*
