UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| AMINA KITWARA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:22-cv-1371 |
| | ) |
| JULIUS JENGE, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE**

COMES NOW, Plaintiff Amina Kitwara ("Amina"), by and through undersigned Counsel, submits the following Memorandum in Opposition to Defendant's Motion to Dismiss or Transfer Venue.

BACKGROUND

As cited in the Complaint, the facts of which are incorporated herein, the Defendant Julius Jenge ("Julius") approached the Kitwara family looking for funds to operate the corporate entity Royal Care Inc. ("Corporation" or "Royal Care"). *See* Complaint ("Com.") at ¶¶ 5, 7. While Royal Care was incorporated in August of 2017, it did not begin operation until the Kitwaras involvement in January of 2020. *Id.* at ¶¶ 5, 7. The Kitwaras agreed to provide the funds but wanted to share control over how Royal Care was governed. *Id*. at ¶ 7. Instead of the Kitwaras purchasing shares in the Corporation, the parties created a General Partnership ("Partnership") as a distinct legal entity and made Royal Care the sole asset of the Partnership. *Id.* at ¶¶ 8, 9.

The Partnership was memorialized by a Partnership Agreement ("Agreement"), entered on January 24, 2020. *See* Compl. ***Exh. 1***. The Partnership was initially made up of Julius

(40%), Amina (30%), Benjamini Mwaipaja (20%), and Desdery Kimolo (10%). *Id*. at ¶ 9, n. 1. As Julius and Desdery were the only two Directors (and Julius the only Shareholder) of Royal Care, Inc. when the Partnership was established, the Agreement reflected unanimous agreement of the Directors and Shareholder of Royal Care, Inc. to the transfer of its shares to the Partnership. Def. Memo. ***Exh. B*** (Articles of Incorporation). After subsequent sales by the other minority Partners, Amina and Julius are now each 50% Partners in the Partnership that owns and operates Royal Care. Compl. at ¶ 9.

Several months ago, Julius breached his Agreement with Amina, removed her (and her families) access to the finances of the Partnership and began misappropriating hundreds of thousands of dollars, by wiring significant funds overseas and withdrawing cashier's checks in his name. *Id*. at ¶¶ 19-20, 22. This suit followed.

ARGUMENT

**1. Defendant's Motion to Dismiss Should be Denied**

Defendant makes two arguments in support of his Motion under Rule 12(b)(6). First, he argues that the Agreement is an unenforceable "agreement to agree." *See* Defendants Memorandum of Law in Support of Motion to Dismiss ("Def. Memo.") at 5. Second, the Defendant argues that the Complaint fails to allege the precise nature of *how* ownership interest in Royal Care was transferred to the Partnership entity. According to the Defendant, because the statutory procedures for issuing stock were not alleged in the Complaint, no transfer of ownership took place, and Plaintiff therefore lacks standing. See Def. Memo. at 8 ("Without the Partnership owning the Corporation, Plaintiff has no standing on her claims related to the internal operations of the Corporation.").

Defendant's arguments fail because: 1) Defendant clearly expressed a present intent to be bound by the Agreement and it is therefore an enforceable contract; 2) Defendant has

misunderstood the difference between *issuing* stock and *transferring* stock and has thus misapplied the Virginia Code; 3) even if the parties did not follow the exact statutory procedure for issuing Royal Care's stock to the Partnership, the Defendant's actions were still binding under the Corporate Formalities Doctrine and effectuated the transfer of Royal Care to the Partnership; and 4) Plaintiff is not required to describe the exact nature and procedure for *how* the Partnership obtained ownership over Royal Care in the Complaint, but merely needed to put the Defendant on sufficient notice of the claim.  For these reasons, expounded upon herein, the Motion should be denied.

      a. *The Partnership Agreement was a binding agreement that memorialized and governed the Partnership.*

Bordering on the frivolous, Defendant first argues that the Agreement was an unenforceable "agreement to agree" because it lacked specificity about capital contributions. Def. Memo. at 5.  The Supreme Court of Virginia "ascertain[s] whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind."  *Wells v. Weston*, 229 Va. 72, 78 (1985); *see also Lucy v. Zehmer*, 196 Va. 493, 503 (1954) ("The law . . . judges an agreement between two persons exclusively from those expressions of their intentions which are communicated between them.").

Before, during, and after the formation of the Agreement, the Defendant's words and actions expressed an explicit intention to be bound.  First, before the formation of the Agreement, the Defendant himself initiated its creation by approaching the Plaintiff and her family seeking startup funds for Royal Care.  *See* Compl. at ¶ 7.  It is counterintuitive, if not nonsensical, for the Defendant to now claim that he lacked the intention to enter into the Agreement he initiated.

Second, the parties collectively drafted the Agreement together.  *Id.* at ¶ 8.  During the Agreement's formation, both parties (along with two other Partners) signed the Agreement, transferring ownership of Royal Care in exchange for substantial startup funds.  *Id.* at ¶¶ 8-9.  The Defendant does not dispute signing the Agreement.  *See* Def. Memo. at 5-6.  Further, after the Agreement was formed, both parties acted in reliance on its terms; *inter alia*, Amina transferred significant funds to Royal Care, and Defendant authorized the Plaintiff's agent to have signing authority over Royal Care's bank account.  Compl. at ¶¶ 7, 13, 26; *see also* Compl. ***Exh. 1*** at ¶¶ 13-14.

Finally, Defendant signed a subsequent agreement buying additional interest in the Partnership.  *See* Compl. ***Exh. 3***.  If Defendant never agreed to be bound by the Agreement, then it is a curious thing that he agreed to buy an additional ownership interest in the entity he now argues does not exist.

For the above reasons, the Court should reject Defendant's first argument and find the Agreement is an enforceable contract.

    b. *Defendants have Misstated the Proper Application of Virginia Code*

Defendant begins his second argument by confusing the statutory distinction between the issuance and transfer of shares under Va. Code Section § 13.1-638, *et seq*.  Def. Memo at 7 ("[T]he Complaint does not allege the Corporation's board of directors authorized the issuances of shares to the Partnership, as required by Virginia Code Section 13.1-643(B).").  Several terms need to be defined and understood before proceeding.  First, "**authorization**" is the determination by a corporation, usually in the Articles of Incorporation, of the class and amount of shares of stock it will have.  See, Va. Code § 13.1-638.  The "**issuance**" of shares refers to a corporation's act of conveying shares from the corporation to a shareholder.  See, Va. Code § 13.1-640 ("A. A corporation may issue the number of shares [] authorized by the articles of

incorporation. Shares that are issued are *outstanding* shares...") (emphasis added).  And finally, a "**transfer**" of shares is when one shareholder conveys shares to another.  See, Va. Code § 13.1-648; Va. Code § 13.1-649.

Here, when Royal Care was incorporated in 2017, its articles of incorporation **authorized** the corporation to issue 100,000 shares.  Def. Memo ***Exh. B***.  Defendant acknowledges that Royal Care **issued** the entirety of its shares to the Defendant.  Def. Memo at 7 ("Since that time, Julius has been *the* stockholder of the Corporation.") (emphasis added).  So when Defendant conveyed all of Royal Care to the Partnership in 2020, he was **transferring** – not issuing - all of the Corporation's stock to the Partnership.  Comp. at ¶8-9.  Meaning, Defendant's reliance on section Va. Code § 13.1-643(B) which states, "***issuance*** of shares must be authorized by the board of directors," is misplaced.  (Emphasis added); Def. Memo at 7.  This is because only a *transfer* from one shareholder (Julius) to another (the Partnership) occurred; there was no *issuance* of shares at this time.  As opposed to a corporation issuing shares, there are no similar statutory procedures a party must follow to transfer shares.  *See generally* Va. Code Section § 13.1-638, *et seq*.  Thus, it is immaterial whether Royal Care's board of directors gave unanimous consent or followed any formalities for Defendant to transfer his shares to the Partnership.

Even if Defendant's misguided view of Va. Code § 13.1-643(B) was correct and the Royal Care Director's authorization to transfer shares was required, the argument would still fail.  Prior to entering the Agreement, Royal Care had two board of directors, Defendant and Desdery Kimolo.  Def. Memo ***Exh. B***.  Under Defendant's misinterpretation of the Code, both Directors would need to consent to Royal Care's shares being transferred to the Partnership, and **they did**.  *Id.* at 7; Compl. at ¶ 9; ***Exh. 1***.  Both Desdery Kimolo and the Defendant signed the Agreement (obtaining an ownership interest in the Partnership) and by so signing authorized the transfer of all shares of Royal Care stock to the Partnership.  *Id.*

Ultimately, Defendant's argument fails because he misreads the Virginia Code and would still fail even if his reading was correct. Accordingly, for either reason, Defendant's motion should be denied.

> c. *Even if the parties did not follow the exact statutory procedure for issuing Royal Care's stock to the Partnership, the Defendant's actions were still binding under the Corporate Formalities Doctrine.*

Even if the Parties failed to comply with formal authorization, which they did not (see argument *supra*), the Corporate Formalities Doctrine would ensure the same result. The doctrine holds that "when stockholders, directors, and officers of close corporations ignore requirements of statutes and corporate by-laws and conduct business in an informal manner, their actions may nevertheless be binding on the corporation." *Gowin v. Granite Depot, LLC*, 272 Va. 246, 253 (2006). Moreover, "Small, closely held corporations . . . often do not follow every statutory requirement imposed on corporations generally. Even so, we repeatedly have refused to invalidate acts of closely held corporations simply because certain corporate formalities were not observed." *Curley v. Dahlgren Chrysler-Plymouth, Dodge, Inc.*, 245 Va. 429, 433-434 (1993) ("shareholders in the corporation, cannot escape liability by failing to observe formality . . .when they exercise all the powers and undertake all the activities of directors.") (Citing *Coastal Pharmaceutical Co. v. Goldman*, 213 Va. 831, 836 (1973)).

Accordingly, the failure of this close corporation to follow statutory requirements would come under the Doctrine and require Defendant to be bound by his transfer of Royal Care ownership to the Partnership. Moreover, equity would demand that a defendant who has blatantly ignored the corporate structure in the past, is estopped from relying on it when convenience demands. *See Boyd v. Payne*, 224 Va. 418, 430 (1992) (holding that because a professional corporation's "shareholders validly conducted the internal affairs of their law practice as a partnership, we hold that the trial court properly settled their rights and liabilities

according to partnership law.") Therefore, even if statutory formalities were not followed, Defendant's Motion should still be denied.

> d. The Exact Nature of How Ownership of Royal Care was Transferred to the Partnership is not Required at the Pleading Stage.

Next, Defendant quibbles with the Complaint's plain allegations that ownership of Royal Care was transferred to the Partnership (*id*. at ¶¶ 8-11); a factual contention that is not properly contested at this stage of the litigation. Def. Memo. at 7 ("[T]he Complaint does not allege the Corporation's board of directors authorized the issuance of shares to the Partnership, as required by Virginia Code Section 13.1-643(B).") Amina was not required to descend into a fulsome description of the exact nature of *how* the transfer took place to meet her burden to state a claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–557 (2007). The facts alleged more than satisfy her low pleading burden.

"Certainty is not required to survive a motion to dismiss." *Wright v. North Carolina*, 787 F.3d 256, 268 (4th Cir. 2015). Further, Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations." *McLean v. United States,* 566 F.3d 391, 399 (4th Cir. 2009). Rather, the Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the plausibility standard of *Twombly* requires only "some **minimal** factual exposition sufficient to state a claim that is 'plausible on its face' in order to survive a motion to dismiss." 2 Moore's Federal Practice - Civil § 12.34 (2022) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–557 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). In considering this Motion, "[P]laintiff's well-pleaded

allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Here, the Complaint alleges that "[t]he Agreement formed a partnership between Amina and Julius . . . and designated the entirety of Royal Care as the property of the Partnership." Compl. at ¶ 9.  The Complaint then substantiates this allegation with facts to form a claim "plausible on its face" for two reasons.  First, the terms of the Partnership Agreement, attached to the Complaint, make clear that the parties were creating a new legal entity with the purpose of owning and operating Royal Care.  *See* Compl. **Exh. 1**.  Second, the Complaint alleges that the parties operated as if the Partnership owned Royal Care.  Compl. ¶¶ at 10-13.

On the first point, the terms of the Agreement designate Royal Care as partnership property by giving the Partnership the same name as "Royal Care, Inc." (**Exh. 1** at ¶ 2) and by describing the Corporation as the "company" or "business" separate from the Partnership itself, see for example:

- Establishing a Board of Directors, uncalled for in a Partnership, to govern the Company (see ¶¶ 8-9, 12 *infra*).  **Exh. 1** at ¶ 7.

- "The Board of Directors shall hire the Chief Executive Officer (CEO) of the Company." *Id.* at ¶ 8.

- "The Board of Directors shall approve the opening of the Company's Bank Accounts ...." *Id.* at ¶ 9.

- "The Board shall mandate Julius M. Jenge and Abdallah Kitwara to open the company's bank accounts as well as to serve as signatories to the accounts." *Id.* at ¶ 12.

- "The books and records of the Partnership will reflect all the Partnerships transactions and will be appropriate and adequate for the business conducted by the Partnership." Compl. *Exh. 1* at ¶ 23.

- "Operation and control of the Partnership and its business will be decided by a unanimous vote of the Partners." *Id.* at ¶ 28.

- "No Partner will engage in any business, venture or transaction, whether directly or indirectly, that might be competitive with the business of the Partnership." *Id.* at ¶ 59.

- "Expulsion of a Partner can occur on application by the Partnership or another Partner, where it has been determined that the Partner[] has engaged in conduct relating to the Partnership's business that makes it not reasonably practicable to carry on the business with the Partner." *Id.* at ¶ 77(C)(iii).

No one is arguing that the business structure chosen by the Plaintiff *and* Defendant was not clumsy, but Defendant's argument fails to account for what the non-lawyer parties clearly chose to set up for themselves in the Agreement; namely, a partnership to own and run a corporation.

Second, the Complaint alleges that the parties behaved as if the Partnership owned Royal Care. For example, no shares of Royal Care were ever issued (or transferred) to Amina in return for her capital contributions. Compl. at ¶¶ 8, 10. Rather, the parties have purchased and sold only interests in the Partnership that owned the entirety of Royal Care. *Id*. at ¶ 9, n. 1; See also Compl. *Exh. 2*, *Exh. 3* (noting in recitals the "'PARTNERSHIP AGREEMENT' [was] to invest and operate Royal Care Inc.") Defendant himself purchased an additional interest in the Partnership, after entering the original Agreement, to gain more profit from Royal Care. Compl. at ¶ 9, n. 1; Compl. *Exh. 3*. Moreover, the parties divided Royal Care's profits and losses based on their ownership interest in the Partnership. *Exh. 1* ¶ at 6. No party, including Defendant,

ever received dividends as a shareholder of Royal Care. Further, the management of Royal Care was to be controlled by the Partnership. Compl. at ¶¶ 10-11. Julius was designated as CEO of Royal Care according to the terms of the Agreement, and the Partnership paid his salary. Compl. at ¶¶ 12-13.

Plaintiff's claim that the Partnership owns Royal Care is simply a plain reading of the Agreement and the subsequent Purchase Agreements. Compl. ***Exhs. 1-3.*** A precise recitation of how stock in Royal Care was issued under the statute is not required to survive a motion to dismiss. If Defendant wants to contest whether a transfer of ownership took place, then he must present that factual question to the jury. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, **it does not resolve contests surrounding the facts**, the merits of a claim, or the applicability of defenses.") (Emphasis added).

2. **Defendant's Motion to Transfer Venue Should Be Denied**

Seeking to move this case to a more convenient location for himself, Defendant asks this Court to transfer the matter to his hometown. Defendant, however, carries the burden of demonstrating that venue should be transferred, and he cannot do that here. *Ward v. INVISTA S.a.r.L., LLC*, 385 B.R. 817, 821 (W.D.N.C. 2008); *see Sohns v. Dahl,* 392 F. Supp. 1208, 1217 (W.D. Va. 1975) ("The burden rests with the defendants to demonstrate that, on balance, the interests of justice and convenience **weigh heavily in favor of the transfer** and against the value that attaches to plaintiff's choice of forum.") (Emphasis added). Defendant's request should be denied because: 1) the Plaintiff has clearly satisfied the requirements of 28 USCS § 1391(b)(2) and 2) the interests of justice favor the Plaintiff under 28 USCS § 1404(a).

    1. *A substantial part of the events and property giving rise to the claim occurred and are located in the Alexandria Division.*

Under 28 USCS § 1391(b)(2), a civil action may be brought in "a judicial district in which a ***substantial part of the events or omissions*** giving rise to the claim occurred, ***or a substantial part of property*** that is the subject of the action is situated.[1]" (Emphases Added).

First, many of the events or omissions that gave rise to this claim did occur in the Alexandria Division. As stated in the Complaint, Defendant violated the Agreement by preventing Amina from sharing management of Royal Care. Compl. at ¶ 37(c). He effectively highjacked control of the Partnership's business by removing Amina's agent as administrator on the bookkeeping and billing software accounts. Compl. at ¶¶ 27, 32. By doing so, Defendant significantly handicapped Plaintiff's ability to participate in management of the Partnership business, which primarily consists of running home health care offices, one of which is located in Alexandria, Virginia.[2] *Id.* at ¶¶ 4, 27. Defendant's bad acts have had a direct impact on Amina's ability to oversee the day-to-day operations of the Alexandria office (as well as the other two). *Id*.

Second, a "substantial part of the property that is the subject of the action" - namely, the Partnership - is located in the Alexandria division. Here, Amina is suing pursuant to her rights as a partner under Va. Code § 50-73.103(B).[3] In short, Amina has been damaged because

---

[1] Conveniently, the Defendant omitted the second half of 28 USCS § 1391(b)(2) when citing the rule in their memo. Def. Memo at 2.
[2] While the Complaint does not expressly mention it, Royal Care operates three offices in Virginia, one in each of Norfolk, Danville and Alexandria.
[3] The statute explicitly authorizes this when: (1) suing to enforce the partner's rights under partnership agreement (*Compare* Va. Code § 50-73.103(B)(1) ("A partner may maintain an action against . . .another partner . . .enforce that partner's rights under the partnership agreement.") *with*  Com. Count I: Breach of Partnership Agreement), or to enforce the partner's rights when a co-partner has breached a fiduciary duty (*Compare* Va. Code § 50-73.102(A) ("Fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care.") *with* Com. Count II: Breach of Fiduciary Duty) or misappropriated Partnership Assets (*Compare* Va. Code § 50-73.99 (G) ("A partner may use or possess partnership property only on behalf of the partnership.") *with* Com. Count III: Conversion).

Defendant has been siphoning hundreds of thousands of dollars of Partnership assets.  Compl. ¶¶ 17-22.  The subject of this action is the financial wellbeing of the Partnership and particularly Amina's 50% interest in it.  While Amina is not suing on behalf of the Partnership directly, the Partnership's wellbeing is still the *subject* of the action.  The Partnership's principal office is in Reston, Virginia, which is obviously located within the Alexandria division.  Compl. ***Exh. 1*** at ¶ 5.

Because the Partnership, the primary subject of this case, is in the Alexandria Division, and many of the events giving rise to the claim occurred in Alexandria, venue is proper under 28 USCS § 1391(b)(2).

2. *The Interests of Justice Favor the Plaintiff*

Moreover, Defendant's argument is really in the nature of a *forum non conveniens* challenge.  But it should fail, because equity demands that venue remain in the Alexandria Division.  Under 28 USCS § 1404(a), "in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  When considering these challenges, the Fourth Circuit has "recognize[d] the primary right of the plaintiff to choose his forum [is] a selection not easily to be overthrown."  *Akers v. Norfolk & W. R. Co.*, 378 F.2d 78, 80 (4th Cir. 1967).  To deny Plaintiff's choice of forum, Defendant must show "compelling considerations." *Moore v. Telfon Communications Corp.*, 589 F.2d 959, 1978 U.S. App. LEXIS 10805 (9th Cir. 1978).  In addition to a plaintiff's choice of forum, the other factors to consider include: "(1) ease of access to proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) residence of parties; (4) location of records and reports; (5) the law governing the action in a diversity case; and (6) the convenience of witnesses." *Copulsky v. Boruchow*, 545 F. Supp. 126, 1982 U.S. Dist. LEXIS 14182 (E.D.N.Y. 1982). "Where other factors are somewhat equally balanced, the plaintiff's choice of forum will

determine the issue." *Forester v. Elk Towing Co.*, 242 F. Supp. 549, 1965 U.S. Dist. LEXIS 7649 (W.D. Pa. 1965). In other words, Plaintiff wins the tie. *First Federal Sav. Bank v. Tazzia*, 696 F. Supp. 904, 1988 U.S. Dist. LEXIS 10442 (S.D.N.Y. 1988).

      Here, the factors heavily favor Plaintiff. First, as Defendant readily admits most of the actions and corresponding evidence occurred virtually, meaning, many of the actions and much of the evidence in this case favors neither venue (Norfolk or Alexandria). Def. Memo. at 3 ("Notably, each of the alleged actions can be done in almost any part of the world by signing into an electronic bank account.") But, more of the witnesses in the case live close to the Alexandria Division. While Amina is the sole Plaintiff in this case, her family assists her with the operation of the Partnership. For example, Amina's father, Abdallah Kitwara, was Amina's agent that Defendant removed as signatory to the Partnership bank account. Compl. at ¶ 26; ***Exh. 1*** ¶ 13. The entire Kitwara family, many of whom assist with running Royal Care and would testify as witnesses, live near the Alexandria division in Maryland. Moreover, the corporate accountant and multiple Royal Care employees who are active in the day-to-day management of the Partnership business live near the Alexandria division. These employees would be key witnesses to testify about the Defendant's dealings. In contrast, no material witnesses, other than Julius, reside in Norfolk.

      Further, access to proof, records, and reports would be easier to access in the Alexandria division than in Norfolk. Partnership records, reports, and documentation will be imperative to Plaintiff proving her case. Compl. at ¶ 37(c), 45(c). In fact, she has already attempted and failed to gain access to these records. See Plaintiff's Motion for Temporary Restraining Order. This evidence is more likely to be located at the Partnership's principal office in Reston (within the Alexandria Division) and at their Alexandria office than in Norfolk.

At its core, this case involves a Defendant who has obstructed Plaintiff's rights at every turn. When he was given control of the Partnership business as CEO, he embezzled its assets (Compl at ¶¶ 19-22); when he contracted to share management responsibilities, he highjacked the company (*Id*. ¶ 27); when asked for accountability, he commandeered Royal Care's bank accounts. *Id*. At every conceivable opportunity, Defendant has been uncompromising in his commitment to conceal and obstruct. He now asks this court to litigate this case in his backyard for no other reason but his own convenience. Such a request is shaky grounds for transferring venue. *SEC v. National Student Marketing Corp.*, 360 F. Supp. 284, 294 (D.D.C. 1973) ("Proof of inconvenience to the movants will not alone suffice, and any such hardship incurred must be viewed in light of and in comparison to those factors which favor the retention of the claims."). Accordingly, Defendant's request to transfer venue should be denied.

## CONCLUSION

WHEREFORE, for the forgoing reasons, Plaintiff respectfully asks this court to DENY the Defendant's Motion to Dismiss or to Transfer Venue.

Respectfully submitted,

Amina Kitwara,

By Counsel:   /s/ Timothy P. Bosson
Timothy P. Bosson, Esq. (VSB: 72746)
Robert Rose, Esq. (VSB: 94493)
Isaiah R. Kalinowski, Esq. (VSB: 71125)
Bosson Legal Group, PC
8300 Arlington Blvd., Ste. B2
Fairfax, Virginia 22031
tbosson@bossonlaw.com
rrose@bossonlaw.com
ikalinowski@bossonlaw.com
Phone (571) 775-2529
Fax (571) 775-2521
*Counsel for Plaintiff*

          Faisal Shawn Mughal, Esq.
          Mughal Law Firm PLLC
          6214 Old Franconia Road. Suite B
          Alexandria, Virginia 22310
          Phone (703) 672-2165
          Fax (703) 672-2166
          shawn@mughallawfirm.com
          *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that a true and correct copy of the foregoing, Memo in Opposition to Defendant's Motion to Dismiss and/or Transfer Venue was filed and thereby served by the Court's ECF system upon counsel for the Defendant as follows:

> Pierce Mccoy, PLLC
> Samuel Walsh, Esq.
> Gabriel McCoy, Esq.
> 101 W Main St #101,
> Norfolk, VA 23510
> P: (757) 685-8252
> sam@piercemccoy.com
> gabe@piercemccoy.com

                                          /s/
                            Timothy P. Bosson, Esq.