IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMINA KITWARA, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 1:22-cv-01371 (PTG/LRV) |
| JULIUS JENGE, | ) ) ) |
| Defendant. | ) ) ) |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Plaintiff's Motion for Default Judgment, or, in the Alternative, for Summary Judgment (Dkt. No. 69). Pursuant to the Court's April 8, 2024 Order (Dkt. No. 77) and 28 U.S.C. § 636(b), the undersigned Magistrate Judge files this Report and Recommendation, a copy of which will be provided to all interested parties.

**I. Procedural Background**

On December 1, 2022, Plaintiff Amina Kitwara filed this action against Defendant Julius Jenge asserting three counts based on Defendant's alleged violations of the parties' partnership agreement. (Dkt. No. 1.) On December 29, 2022, Defendant Jenge filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) or, in the alternative, to transfer. (Dkt. No. 13.) On February 2, 2023, the Court held a hearing on Defendant's motion, which the Court granted in part and denied in part, and granted Plaintiff leave to amend the complaint within fourteen days. (Dkt. No. 21.) On February 16, 2023, Plaintiff filed an amended complaint. (Dkt. No. 22.) On March 2, 2023, Defendant filed a second motion to dismiss, which the Court heard on April 13, 2024. (Dkt. Nos. 24 & 34.) The Court granted Defendant's motion to dismiss and granted Plaintiff leave to file a second amended complaint within twenty-one days. (Dkt. No. 35.) On May 4, 2023, Plaintiff

filed a Second Amended Complaint ("SAC") (Dkt. No. 37), which Defendant again moved to dismiss on May 18, 2023. (Dkt. No. 38.) On June 22, 2023, the Court held a hearing on Defendant's third motion to dismiss, which it granted in part and denied in part. (Dkt. Nos. 45–46.) The Court granted Defendant's motion as to Plaintiff's Count III (Conversion), with prejudice, and denied the motion as to Plaintiff's Count I (Breach of the Oral Partnership Agreement), Count II (Breach of Fiduciary Duty), and Count IV (Unjust Enrichment). (Dkt. No. 46.) Accordingly, Plaintiff's SAC is the operative complaint and only Plaintiff's Counts I, II, and IV remain. (*See* Dkt. No. 37.)

On July 13, 2023, Defendant filed an Answer to Plaintiff's SAC. (Dkt. No. 47.) On July 14, 2023, the Court issued a Scheduling Order (Dkt. No. 48), which opened discovery in this matter. On August 10, 2023, the Court granted the motion by Defendant Jenge's attorney, Samuel Walsh of Pierce McCoy, PLLC, to withdraw as counsel of record in this matter. (*See* Dkt. Nos. 49–50, 52, 57.) On August 23, 2023, the Court issued a Rule 16(b) Scheduling Order governing discovery, noting that Defendant Jenge, proceeding pro se, failed to appear at the initial pretrial conference. (Dkt. No. 62.)

Discovery closed on November 10, 2023. (*See* Dkt. No. 48.) On November 15, 2023, the Court called the matter for a final pretrial conference, at which counsel for Plaintiff appeared but Defendant Jenge did not appear. (Dkt. No. 65.) On November 15, the Court entered an Order (Dkt. No. 66), requiring Defendant to show cause for his failure to appear at the final pretrial conference. On December 13, 2023, the Clerk of Court filed on the docket a letter from Defendant Jenge dated November 30, 2023, which stated that he "was not able to appear/attend the telephone docket call because [he] was out of the country for . . . family emergency issues." (Dkt. No. 67.) The letter also requested that the Court provide Defendant Jenge additional time to secure legal representation. (*Id.*)

On February 16, 2024, the Court entered an order stating that, because "Defendant has filed no update on the docket as to his search for counsel" in the preceding two months, "the parties [must]

2

appear for a status conference" so the matter could be set for trial. (Dkt. No. 68.) The same day (February 16), Plaintiff filed the instant Motion for Default Judgment or, in the Alternative, for Summary Judgment, as well as a memorandum and affidavit in support. (Dkt. Nos. 69–70.) On February 29, 2024, the Court held a status conference at which counsel for Plaintiff appeared; Defendant Jenge again failed to appear. (Dkt. No. 72.) Following the status conference, the Court issued a Show Cause Order directing Defendant to file, within twenty-one days, "an opposition showing cause as to why Plaintiff's motion for default judgment or, in the alternative, for summary judgment (Dkt. 69) should not be granted." (Dkt. No. 73 at 2.) The Court "warn[ed] Defendant that if he fails to show cause within the twenty-one (21) days of the date of [the] Order, judgment may be entered against him." (*Id.*) On April 8, 2024, after having received no opposition by Defendant, the Court referred Plaintiff's Motion to the undersigned to submit proposed finding of fact and recommendations for the disposition of Plaintiff's Motion. (Dkt. No. 77.)

## II. Plaintiff's Alternative Requests for Default Judgment or Summary Judgment Against Defendant Jenge

Plaintiff moves for default judgment or, in the alternative, for summary judgment against Defendant Jenge on the first two counts of the SAC: Count I for breach of oral partnership agreement and Count II for breach of fiduciary duty. (Dkt. No. 69 at 1.) Plaintiff asserts that because "Defendant has failed to comply with a single deadline this Court has set or any discovery deadlines in Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), or 36(a)(3)," the Court should "deem Plaintiff's Requests for Admission #1-20 admitted by Defendant" pursuant to Federal Rule of Civil Procedure 36(a)(3), and find that Defendant Jenge is in default. (*Id.*) Plaintiff further asserts that, in the alternative, summary judgment on Counts I and II is appropriate because Defendant has admitted to RFAs #1-20 and there is thus "no genuine dispute as to any material fact" under Federal Rule of Civil Procedure 56(a). (*Id.*)

As an initial matter, the undersigned recommends a finding that Defendant is in default pursuant to Rules 37 and 55 of the Federal Rules of Civil Procedure. Under Rule 37, the Court may sanction parties for failing to participate in discovery and abide by prior court orders, including by "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). Here, Defendant Jenge failed to appear at the Rule 16(b) initial pretrial conference, respond to Plaintiff's discovery requests, and abide by the Court's prior orders to show cause and to appear. Specifically, on February 29, 2024, the Court directed Defendant to show why the Court should not enter judgment against him, stating: "The Court warns Defendant that if he fails to show cause within twenty-one (21) days of the date of this Order, judgment may be entered against him." (Dkt. No. 73.) Defendant, however, did not respond to the Court's Show Cause Order and has not responded to Plaintiff's Motion for Default Judgment or Summary Judgment. Under Rule 37, therefore, the Court has discretion to strike Defendant's Answer and enter default judgment against him. *See, e.g., Access Point Fin., Inc. v. A Royal Touch, Inc.*, 2:17-CV-02037-DCN, 2019 WL 13150916, at *3 (D.S.C. Sept. 17, 2019) (striking answers and entering default judgment due to defendants' failure to respond to discovery request); *see also JTH Tax, LLC v. White*, 2:22-CV-272, 2023 WL 3321737, at *1 (E.D. Va. May 9, 2023) ("Courts in this district have found that default judgment should be granted when the defaulting party's unresponsiveness has halted the adversary process.").

Additionally, upon review of Plaintiff's motion and the entire record in this matter, the undersigned finds that rendering default judgment against Defendant would be more appropriate than granting Plaintiff's alternative request for summary judgment. Notably, Plaintiff's request for summary judgment does not comply with Local Civil Rule 56(b), which requires a moving party to "include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed

facts as alleged to be undisputed." L. Civ. R. 56(B). Furthermore, pursuant to Federal Rule of Civil Procedure 56(a), a party is only entitled to summary judgment if she "shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if it might affect the outcome of the suit under the governing law." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)). Courts "in the Fourth Circuit may not consider inadmissible evidence on a motion for summary judgment." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023).

Here, conflicts of material fact appear to exist within the record that would preclude summary judgment. Specifically, Defendant Jenge's Answer to the SAC (Dkt. No. 47), contains denials that appear to conflict with some of Plaintiff's RFAs. For example, Defendant's Answer denies Plaintiff's allegation in Paragraph 28 of the SAC that "Mr. Jenge immediately transferred $293,750.00 of the Partnership's funds into the Undisclosed Account." (Dkt. No. 37 ¶ 28.) But Plaintiff's RFA 8 (which Plaintiff argues should be deemed admitted by Defendant for his failure to respond) states: "Admit that you wrongly misappropriated Partnership assets by transferring $293,750.00 dollars of Partnership funds to the Undisclosed Account for your personal use." (Dkt. No. 70-2 at 12.) Thus, Defendant's denial in the Answer is inconsistent with any potential admission regarding the alleged misappropriation of funds. And, even if the Court cured these inconsistencies by striking Defendant's Answer, then it would be more appropriate to render default judgment against Defendant under Rule 55 for his failure to "plead or otherwise defend" than to grant summary judgment to Plaintiff. *See* Fed. R. Civ. P. 55 (a), (b).

Accordingly, the undersigned recommends a finding that default judgment—as opposed to summary judgment—is the appropriate avenue for adjudicating the merits of Plaintiff's claims and for sanctioning Defendant's failure to participate in discovery and abide by the Court's orders. The

undersigned thus recommends that the Court enter default judgment against Defendant Jenge pursuant to Federal Rules of Civil Procedure 37 and 55, as explained in detail below.

### III. Legal Standard

Federal Rule of Civil Procedure 55 provides that default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a)–(b). Although a defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), conclusions of law or "allegations regarding liability that are not 'well-pleaded'" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014). Before entering default judgment, therefore, the Court must determine whether the facts, as alleged in Plaintiff's complaint, state a claim for relief. *JTH Tax, Inc.*, 8 F. Supp. at 736 (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

### IV. Jurisdiction and Venue

The Court must have both subject-matter and personal jurisdiction, and venue must be proper before rendering default judgment. Upon review, the undersigned finds that there is subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy alleged in the SAC exceeds $75,000. (*See* Dkt. No. 37 ¶¶ 1–3.) Additionally, there is personal jurisdiction over Defendant Julius Jenge because he has appeared in this matter and has submitted to the Court's jurisdiction. *See* Fed. R. Civ. P. 12(h)(1)(A) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2) . . . ."); *see also* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising

a defense or objection that was available to the party but omitted from its earlier motion."). Finally, venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred within this District, as the principal office of the alleged partnership is located at 11890 Sunrise Valley Dr. Ste. # 606, in Reston, Virginia, which is within this District. (*See* Dkt. No. 37 ¶ 4.)

## V. Liability

As stated above, given that the undersigned recommends the Court enter default against Defendant for failing to participate in discovery and respond to the Court's show cause orders, the undersigned thus recommends that the factual allegations in Plaintiff's SAC be deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *Globalsantafe Corp. v. Globalsantafe.Com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Accordingly, pursuant to the SAC, the undersigned finds that the following facts have been established.

On August 3, 2017, "Royal Care Inc." was incorporated in the state of Virginia as a home health care business. (Dkt. No. 37 ¶ 5.) In late 2019, Defendant Julius Jenge "approached Mr. and Mrs. Kitwara ([Plaintiff's] parents) seeking financial support for Royal Care. The parties agreed that the Kitwaras would fund Royal Care's operations in exchange for an ownership interest, to be held by Amina Kitwara." (*Id.* ¶ 7.) Instead of issuing Royal Care stock to the Kitwaras, however, it was agreed that Defendant Jenge would "transfer 100% of Royal Care's stock to a general partnership ('Partnership'), that would own, control and operate the Corporation." (*Id.* ¶ 9.) Thus, on January 24, 2020, Plaintiff and Defendant "created the Partnership entity by entering into the valid, binding oral Partnership Agreement." (*Id.* ¶ 41.) Since January 2020, "Royal Care has been subsumed by the Partnership and has been operated exclusively by the Partnership." (*Id.* ¶ 44.)

The Partnership initially had four partners who "agreed, orally, to the primary terms by which the Partnership would be operated ('Partnership Agreement')." (*Id.* ¶ 11.) Those terms included,

among other things, that: (1) Ms. Kitwara would make all of the necessary capital contributions to get the business running; (2) the other partners, including Defendant, "would not have to make any capital contributions but would repay their share of the initial contributions from their future Partnership distributions"; and (3) the Partners would share power over the Partnership where Defendant Jenge would serve as CEO of Royal Care Inc., "all bank accounts would be considered those of both Royal Care and the Partnership and would have one signatory appointed by Mr. Jenge and one by" Plaintiff, and a person appointed by Plaintiff would "control Royal Care's billing and payroll services." (*Id.* ¶¶ 11–14.)

In the summer of 2022, Plaintiff learned that Defendant Jenge "had not been paying employee payroll taxes and the Corporation [Royal Care] had incurred a substantial IRS tax lien of close to $600,000." (*Id.* ¶ 24.) Upon investigation, Plaintiff discovered that Defendant had "obtained a high-interest rate loan in Royal Care's name for approximately $300,000 ('Loan Funds')" without Plaintiff's consent. (*Id.* ¶ 26.) Defendant "initially deposited some of these Loan Funds into the Royal Care main bank account in early August," but subsequently "set up a new bank account for Royal Care without any notice to Ms. Kitwara and with only himself as a signatory," to which he then "transferred $293,750.00 of the Partnership's funds." (*Id.* ¶¶ 27–28.) In August 2022, Defendant Jenge also "wired $30,000 overseas to his country of origin, Tanzania, for his own personal purposes" and "began writing unexplained checks believed to be for non-business purposes in an amount of more than $60,000." (*Id.* ¶¶ 30–31.)

In October 2022, Defendant Jenge realized Plaintiff was examining the bank and financial accounts and "hastily removed Ms. Kitwara's agent, serving as co-signatory on Royal Care's bank accounts and administrator on the bookkeeping and billing accounts." (*Id.* ¶ 35.) Currently, Defendant Jenge maintains control over the Royal Care bank accounts and bookkeeping and billing software, which is used for "scheduling employees, paying employees and vendors, and keeping

track of Corporation expenses." (*Id.* ¶ 36.) To date, Defendant "has refused to provide Ms. Kitwara (or her agent) access to the banking, billing and bookkeeping accounts as required by the Agreement." (*Id.* ¶ 37.) Plaintiff thus now moves for default judgment against Defendant Jenge on Count I (breach of oral partnership agreement) and Count II (breach of fiduciary duty) of the SAC. (*Id.* ¶¶ 39–57.)

### A. *Count I (Breach of Oral Partnership Agreement)*

Pursuant to the Virginia Uniform Partnership Act, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Va. Code Ann. § 50-73.88. The Act further provides that a "'[p]artnership agreement' means the agreement, whether written, oral, or implied, among the partners concerning the partnership, including amendments to the partnership agreement." *Id.* § 50-73.79. Under the Act, a "partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to: (1) [e]nforce that partner's rights under the partnership agreement; [and] (2) [e]nforce that partner's rights under this chapter." *Id.* § 50-73.103(B). Additionally, to establish a claim for breach of contract under Virginia law, a plaintiff must demonstrate: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)); *accord Goldbelt Wolf, LLC v. Operational Wear Armor, LLC*, 1:15CV1269 (JCC/JFA), 2016 WL 3144047, at *5 (E.D. Va. May 13, 2016), *report and recommendation adopted*, 2016 WL 3092545 (E.D. Va. June 2, 2016) (citing *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 379 (1989)).

Taking the factual allegations in the SAC as true, Plaintiff has established all three elements of her claim for breach of the oral Partnership Agreement. First, Plaintiff alleges that the parties

9

"created the Partnership entity by entering into the valid, binding oral Partnership Agreement on or around January 24, 2020," and that she and Defendant "agreed, orally, to the primary terms by which the Partnership would be operated." (Dkt. No. 37 ¶¶ 11, 41.) Pursuant to the Virginia Uniform Partnership Act, Plaintiff has thus pled the existence of a legally enforceable obligation—namely, Defendant's obligations under the valid Partnership Agreement. Second, Plaintiff alleges that Defendant breached his obligations under the oral Partnership Agreement. Specifically, while the parties agreed that the "Partnership would be based on a power-sharing arrangement where power would be split between Mr. Jenge and the Kitwaras," including that "all bank accounts . . . would have one signatory appointed by Mr. Jenge and one by Ms. Kitwara," Plaintiff alleges that Defendant violated this term by "removing the agent of Ms. Kitwara as a signatory on Royal Care/the Partnership's bank accounts." (Dkt. No. 37 ¶¶ 11–14, 45(c).) Accordingly, Plaintiff has alleged sufficient factual material to demonstrate that Defendant breached his obligation under the oral Partnership Agreement.

Finally, Plaintiff alleges that she has suffered injury because of Defendant's breach—i.e., that as "a direct and proximate result of Defendant's . . . material breaches of the Agreement," Plaintiff has "been removed from access as a partner, incurred significant debts via her partnership interest and suffered extensive losses." (*Id.* ¶ 46.) Thus, because Plaintiff states all of the elements of breach of contract under Virginia law, *see Sunrise Continuing Care*, 671 S.E.2d at 135, the undersigned recommends a finding that Plaintiff has stated a claim for breach of the oral Partnership Agreement as alleged in the SAC.

### B. Count II (Breach of Fiduciary Duty)

Under Virginia Code § 50-73.102(A), a partner in a partnership owes duties of loyalty and care, which "arise independent of" a partnership agreement. *Multi-Hous. Tax Credit Partners XXX v. Alexander Dairy Assocs.*, No. 3:20-CV-612, 2021 WL 981493, at *5 (E.D. Va. Mar. 16, 2021)

10

(citing *Three Rivers Landing of Gulfport, LP v. Three Rivers Landing, LLC*, No. 7:11cv25, 2012 WL 1598130, at *4 (W.D. Va. May 4, 2012)). A partner's duty of loyalty is limited, in relevant part, to "account[ing] to the partnership and hold[ing] as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity." Va. Code Ann. § 50-73.102(B)(1). Additionally, a partner's duty of care "is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." Va. Code § 50-73.102(C). The elements of a claim for breach of fiduciary duty are: "(1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *Multi-Hous. Tax Credit Partners XXX*, 2021 WL 981493, at *5 (quoting *NorthStar Aviation, LLC v. Alberto*, 332 F. Supp. 3d 1007, 1016 (E.D. Va. 2018)).

Here, Plaintiff alleges all three elements of a claim for breach of fiduciary duty. First, Plaintiff alleges that Defendant, as a partner to the Partnership that was established by oral agreement between the parties, "had a fiduciary duty of loyalty and care to the Partnership and to [Plaintiff] as co-partner to discharge his duties . . . in the best interests of . . . the Partnership." (Dkt. No. 37 ¶ 54.) Second, Plaintiff alleges that Defendant breached his fiduciary duties by engaging in the following actions: removing Plaintiff's co-signatory on the Royal Care accounts and systems; creating an undisclosed account without Plaintiff's knowledge or permission; obtaining a high-interest loan in Royal Care's name for approximately $300,000 without Plaintiff's consent; withdrawing Royal Care's funds in the form of untraceable cashier's checks for personal use; and transferring "tens of thousands of dollars of Royal Car's funds to international accounts for [Defendant's] own personal gain"; and failing to pay employment taxes;  (*Id.* ¶ 55.) Although Plaintiff asserts that each of these actions constitute a breach of Defendant's fiduciary duties, the undersigned recommends a finding that only

the following actions constitute a breach of Defendant's fiduciary duties of care and loyalty under Virginia law.

First, Defendant breached his duty of loyalty to "hold as trustee for [the Partnership] any property . . . derived from a use by the partner of partnership property," Va. Code Ann. § 50-73.102(B), by withdrawing Partnership funds via "untraceable cashier's checks that were issued to and cashed by Mr. Jenge" in his personal capacity, and also by transferring $293,750.00 of the Partnership's funds into the Undisclosed Account and other international accounts for his "own personal use" (Dkt. No. 37 ¶¶ 28, 32, 33, 55(d)-(f)). Thus, by using Partnership assets for his "own personal use" and not for the benefit of the Partnership, Defendant has breached his duty of loyalty. Second, Defendant breached his duty of care to refrain "from engaging in grossly negligent or reckless conduct," Va. Code Ann. § 50-73.102(C), by failing to pay employee payroll taxes and incurring a U.S. tax liability in the amount of $600,000 (Dkt. No. 37 ¶¶ 24, 25). Arguably, Defendant's actions were in contravention of U.S. tax law, and incurring substantial liability and penalties for failing to pay taxes would certainly qualify as grossly negligent or reckless conduct to the detriment of the Partnership. As to these actions, therefore, Plaintiff has alleged that Defendant breached his fiduciary duties, resulting in "significant[] damage" to Plaintiff, which also satisfies the third element of a cause of action for breach of fiduciary duty. *See Multi-Hous. Tax Credit Partners XXX*, 2021 WL 981493, at *5.

As to the other actions alleged in the SAC, however, the undersigned recommends that the Court find Plaintiff has not alleged sufficient facts to establish Defendant's breach of his fiduciary duties of care and loyalty to the Partnership or other partners (including Plaintiff). In particular, Plaintiff does not allege how Defendant's actions of removing her co-signatory from the accounts, opening up a new account in Royal Care's name, or obtaining a loan in Royal Care's name constitute Defendant's failure to hold Partnership property as a "trustee" or constitute grossly negligent or

reckless conduct. Thus, while certain actions alleged in the SAC—such as removing Plaintiff's access to Royal Care's accounts or "[r]efusing to provide [Plaintiff] or her agents and attorneys access to the Partnership's books and records"—may violate the oral *Partnership Agreement*, they do not constitute breaches of Defendant's fiduciary duties under the Virginia Uniform Partnership Act. *See* Va. Code Ann. § 50-73.102(E) ("A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest.").

## VI. Relief

Unlike liability, allegations concerning damages are not admitted upon default. *See* Fed. R. Civ. P. 8(b)(6). Instead, the court must "make an independent determination regarding damages," and may consider affidavits or other documentary evidence in the record. *Wilcox v. Transmodal Sols.*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (quoting *PharMerica East, LLC v. Healthlink of Va. Shores, LLC*, 2:19cv456, 2020 WL 877983, at *3 (E.D. Va. Feb. 20, 2020)). Here, Plaintiff's SAC requests "compensatory damages in an amount of at least $1,000,000" (Dkt. No. 37 ¶ 64(a)), and Plaintiff's Motion for Default Judgment and supporting memorandum specifically request a judgment "in the amount of $388,750.00" (Dkt. No. 70 at 6). As explained below, however, Plaintiff's conclusory allegations regarding damages are insufficient to support her request because Plaintiff seeks those damages in her *personal capacity*, instead of in the name of the Partnership. Accordingly, on the record presented, the undersigned recommends a finding that Plaintiff is entitled to an award of $0 in damages.

Under Virginia law, any "[p]roperty acquired by a partnership is property of the partnership and not of the partners individually," and a "partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily." Va. Code Ann. §§ 50-73.89, 50-73.105. Here, Plaintiff claims that the "undisputed misappropriated

funds total $368,750.00 and the attorney fees incurred due to the tax liability equals $20,000.00, for a total damage amount of $388,750.00." (Dkt. No. 70 at 6.) As Plaintiff acknowledges, however, the allegedly misappropriated funds were property of the *Partnership*, not of Plaintiff personally. Specifically, Plaintiff asserts: "Mr. Jenge breached the Partnership Agreement by: (1) wrongly misappropriat[ing] $368,750.00 dollars of **Partnership assets** for [his] personal use without the permission or knowledge of Ms. Kitwara" (*id.* at 4 (emphasis added)), and that "Mr. Jenge wrongly misappropriated at least $368,750.00 dollars of **Partnership assets** for his personal use without [Plaintiff's] permission or knowledge and by failure of his fiduciary duty to pay the Partnership taxes." (Dkt. No. 70-3 ¶ 9 (emphasis added); *see also* Dkt. No. 37 ¶¶ 28, 30, 33, 34 (discussing misappropriation of "Partnership funds").) Thus, even assuming the alleged misappropriated money is the *Partnership's* property (and not that of the corporation, Royal Care Incorporated),[1] it is clear such property is not *Plaintiff's* personal property. *See* Va. Code Ann. §§ 50-73.89, 50-73.105; *see also* June 22, 2023 Order (Dkt. No. 46) (dismissing Plaintiff's conversion claim, which was conceded by Plaintiff). Accordingly, any Partnership funds that were misappropriated by Defendant Jenge—resulting in a breach of the Partnership Agreement and/or Defendant's fiduciary duties as outlined above—belong to the *Partnership* alone, and Plaintiff cannot recover those damages in her personal capacity. *See, e.g., Salahi v. DD Ent., LLC*, No. 130116, 2014 WL 11398618, at *4 (Va. Feb. 27, 2014) (McClanahan, J., concurring in part and dissenting in part) ("Proceeds earned by the

---

[1] The undersigned doubts seriously the legal adequacy of the SAC's conclusory contention that the Partnership and the separate corporate entity, Royal Care Incorporated, "are and have been basically melded into one another" such that the bank accounts in Royal Care's name are in fact the property of the Partnership. (Dkt. No. 37 ¶ 44; *see also* Dkt. No. 70-3 ¶ 5.) Nevertheless, for purposes of default judgment, the undersigned takes as true Plaintiff's allegation that "all bank accounts would be considered those of both Royal Care and the Partnership." (Dkt. No. 37 ¶ 14.) Accordingly, any funds within the Partnership's bank accounts constitute property of the *Partnership*—not of Plaintiff personally.

partnership are the property of the partnership."); *contra* Dkt. No. 70-3 ¶ 10 ("Mr. Jenge is liable to me in the amount of $388,750.00.").

Finally, although Plaintiff's Motion for Default Judgment also asserts that Defendant is liable for "fail[ing] to repay [his] share of initial capital contributions to the Partnership in the amount of $100,000.00" (Dkt. No. 70 at 4–5), Plaintiff has not sufficiently established that Defendant owes Plaintiff that amount as a result of Defendant's breaches pursuant to Counts I and II. Notably, the SAC does not state how much Plaintiff contributed to the Partnership, whether Plaintiff has received her share of capital contributions, or any portion thereof, back in the form of distributions from the Partnership, or even how much Defendant Jenge was obligated to repay pursuant to the oral Partnership Agreement. Similarly, although Plaintiff's Motion for Default Judgment and supporting affidavit assert that Plaintiff has "incurred $20,000 in legal fees" to defend herself against an IRS investigation (Dkt. No. 70-3 ¶ 8), the SAC is devoid of any specific factual allegations tying these alleged damages to Defendant Jenge's breaches. Moreover, the IRS Notice of Federal Tax Lien attached as Exhibit 2 to the SAC is addressed to Royal Care Incorporated, and makes no mention of Plaintiff. (Dkt. No. 37-2.)

Accordingly, for the reasons stated above, the undersigned recommends a finding that Plaintiff is entitled to $0 in damages.[2]

## VII. Recommendation

For the reasons stated above, the undersigned recommends that the Court (1) deny Plaintiff's motion for summary judgment; (2) grant in part and deny in part Plaintiff's motion for default judgment against Defendant Jenge; (3) enter judgment against Defendant Jenge finding that

---

[2] Plaintiff's submissions in support of her Motion request only monetary damages; no injunctive relief is requested. (*See* Dkt. No. 70 at 6.) Accordingly, this Report and Recommendation does not address the extent to whether any injunctive relief would be appropriate and does not recommend an injunctive award.

15

(a) Defendant is liable on Plaintiff's Counts I (breach of oral partnership agreement) and II (breach of fiduciary duty) of the Second Amended Complaint, and (b) Plaintiff, in her personal capacity, is entitled to $0 in damages.

## VIII. Notice

The parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to timely object waives appellate review of the substance of this Report and Recommendation and any judgment or decision based on it.

The Clerk of Court is directed to mail a copy of this Report and Recommendation to Defendant Julius Jenge at the following address:

>  1600 Granby St.
>  #304
>  Norfolk, VA 23510

Counsel for Plaintiff is directed to send a copy of this Report and Recommendation by email to Defendant Julius Jenge at the email address with which Plaintiff has previously communicated with Mr. Jenge and to file a certificate of service indicating the same.

**ENTERED** this 14th day of August, 2024.

/s/ *LRV*
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia